Judge Underwood
delivered the opinion of the Court.
Ryan brought an action on the case, in the Henry circuit court, against Gordon, the sheriff of Henry county, for permitting Griffith (against whom Ryan had recovered a judgment,) to escape from the custody of the sheriff, after he had been surrendered by his special bail, and prayed in' custody. Ryan succeeded in the court below, and Gordon has appealed to this court. The first error assigned, questions the sufficiency of the declaration. We perceive n® fatal defect in the declaration, especially in the last count. The averments set out with sufficient clearness, the institution of the suit by Ryan against Griffith, the holding him to bail, his surrender in open court by the bail in discharge of'the. undertaking of the bail, his being prayed in custody by the counsel for Ryan, his being ordered into the custody of the sheriff by the court or judge, the obtention of the judgment against him, and his escape permitted and suffered by the officer, in consequence whereof, Ryan, the plaintiff, alleged his debt was lost. These averments, we think, shew a good cause of action.
Since the abolition of imprisonment for debt by the legislature, in 1821, see 1 Digest, 503, it has been decided in the case of Peteet vs. Owsley, 7 Monroe, 130, by this court, that special bail was not responsible to the plaintiff in the-action, because no capias ad satisfaciendum could issue againt the defendant. The third section of the act abolishing the ca. sa. authorizes a single justice of the peace to discharge a prisoner for debt, when “committed upon order requiring bail, or upon any, capias ad satisfaciendum,” and such dfschage is not made to depend upon the prisoners surrendering a schedule of his estate, and taking the oath of an insolvent debtor, as the law was before. The fourth section of the same act provides, that the *56 discharge of prisoners “arrested under orders requiring bail, or a writ of ne exeat? Those provided for in the fourth section, are required to render a schedule of their property, and to take the oath of an insolvent debtor, as prescribed by the act of 1796; see 1 Lit-tell’s Laws, 547. We believe the commitments intended in the third section, are such as should take plo.ee under final process of execution, or by order of the court, when the debtor is surrendered by his bail. The arrests spoken of in the fourth section, allude to those which take place on mesne process. Griffith was committed, if ever in custody, by order of the court, and therefore his situation was provided for by the third section. , Now* considering the operation of the decision of this court’ia. the case cited, if the principle settled therein, should be permanently adhered to, and reflecting on the consequences of said third section, under which a justice of the peace could have discharged Griffith, without securing a schedule of his property for the benefit of Ryan; we* upon first impression, were inclined to say, that the sheriff should be irresponsible likewise, not perceiving apy satisfactory reason on which to base his liability for suffering the escape of a prisoner, who may obtain his discharge on application to a justice of the peace, without the semblance of benefit to his creditor.- But, knowing it to be our duty to observe the maxim, ita lex scripla esl, rather than to act from considerations of policy, we feel ourselves constrained to regard the sheriff, as responsible as heretofore, for the safe keeping of debtors committed to his custody, and that if he suffers an escape, he must take the consequences, no matter how unavailing the commitment of the debtor may be, and notwithstanding his discharge is so easily had. It is the sheriff’s duty to leave the discharge with the justice of the peace, where the law has placed it, and to guard against an escape.
That act examined, discussed and f construed.
This case provided for by the 3d section of the act; and the debtor might have been discharged by a single justice of the peace, without surren-' dering a schedule and tailing the oath of an insolvent debtor. Nevertheless the sheriff is responsible. Ita lex scripla f.sl.
instructions asknsel>^orhe the defendant and overruled by the court.
The next errors assigned, questions the legality of the decisions of the court below, in refusing instruc^'ons asked by defendant’s counsel.- The defendant by his counsel, asked the court to give two instructions to the jury. 1st, That one of Griffith’s bail could not be released by surrendering him without the consent *57 of the other. And 2d; That one of the bail was still liable to the plaintiff, and that as plaintiff might pursue him and collect the money; if he was good for it, being no evidence to the contrary,) it should mitigate the damages. Both these instructions were refused by the court, and we think properly. Upon the surrender of the principal, before the return day of the first scire facias returned executed, or the second fefcurned nihil, all the bail is discharged. The 14th section of the act of 1796, 1 Littell’s Laws, 495, will admit of no other construction; and this principle, we think, remains untouched, notwithstanding the mutations the law on this subject may have undergone in regard to the responsibility of the bail. The first instruction asked, was therefore rightly refused, and the second being predicated on the first, properly suffered the same fate.
14th section of the act óf 1796¡ I. LitwgV^ter. prated,
^g°e correct when a new ’ trial is asked refuse(b the^pfnion0 of the court overruling yet^fthT’* evidence be-spread upon by^m^rfex ception, if it appear from ^a^ane1 trial ought to have been 4ae take exception to the 0Pjm.on refusing the new trial, is ¿ourts'have a discretion, as to. time be allowed to prepare A bill of exceptions, os well as to the time when any point may be ruled,or question determined. The bill of exceptions not being signed in the same term at which verdict is rendered, does not vitiate. The points presented in the progress of a cause must be noted, and the right to except reserved.
*57 The last error assigned is, that the court refused a new trial. The evidence is all taken down and made part of the record; but there is no formal exception to the opinion of the court overruling the motion for a new trial. This we do not believfe to be indispensibly necessary, although it is the most usual and approved course. The new trial is asked for, and that shews an unwillingness to acquiesce in the verdict and judgment. The evidence being all put down, enables this court to determine, whether the court below decided erroneously, in refusing a new trial. All things are exhibited on the record, and if error is apparent, we believe it our duty to correct it; and that we shpuld not stop our ears and refuse to listen to a well founded complaint, because the party moving for the new trial, did not, when his motion was overruled, tender a formal bill of exceptions. It is enough, if the record shews the motion was made and overruled, provided, when all the evidence is put down, (which must be done,) it appears to us a new trial ought to have been granted.
But it is urged in this case, that the bill ’of exceptions containing the evidence, should be altogether disregarded, because it was not signed, sealed, and made part of the record, at the term the judgment was rendered. After the jury found their verdict, the *58 court took until the next term to consider of the judgment; and at the term when judgment was rendered, the court gave the defendant leave until the next term, thereafter, to file exceptions. It is argued, that exceptions so filed, are void, and should not be regarded. This we do not concede. It is the duty of the court below, to allow the party exceptions as matter of right; and if lime should be given from term to term, to prepare them, and that be erroneous, it would be making the errors of the court close ihe door against all redress to the injured party. It may often happen, and sometimes does, that important causes are not decided until the last hour of the term by the jury. In such cases, from necessity, the court must often take time to consider until the next term, and also give time to prepare exceptions. These things must be left to the sound discretion of the inferior courts. The points put down in the exceptions thus! be made and reserved in the progress of the cause, and if nol, the party may waive the objection; but when the points are so made and reserved, they may be reduced to writing and placed-in the record thereafter, .at the discretion of the court. We will not say, that the' inferior courts may not so abuse their discretion as to make it error; but in this case we see ño such abuse. The court below seems to have been in much difficulty in relation to the, proper disposition of the cause. Regarding the bill of exceptions and the evidence, therefore, as properly before us, it only remains for us to decide, whether the evidence justified the finding of the jury. To make an officer liable for an escape, it is necessary that the person escaping, should have been in the custody of the officer. The person must be taken, before it is possible that he can escape. Now, there is not a particle of proof to shew, that Gordon or any of his deputies, had taken or arrested Griffith, after he had been prayed in custody; nor is there any proof to shew, that Gordon and his deputies were in court at the time that the entry was made on the record, that Griffith had been prayed in custody. If they had been present, we are of opinion, that they were not bound to take notice of such an entry, and then to lay hands forthwith on Griffith, and hold him as a prisoner. Wc think the sheriff was not bound to do *59 this, until directed by the court, It does not appear, that any such direction or order was ever given the sheriff or his deputy, by the court, nor does it ■that Griffith ever was in custody of the sheriff, after he was surrendered by the bail. He might, by order of the court, have been committed to the jailor, as well as to the sheriff. It does not-appear that he was ■in the custody of either. He could not therefore have escaped, unless he wa* actually in custody, and as there is no evidence proving his arrest, or that he was actually in custody, or conducing to establish that fact, we think a new trial ought to have been awarded. We cannot indulge the presumption, that Griffith was in custody of the sheriff, from the single fact of the counsel of Ryan asking the court to commit him, when he was surrendered by the bail, even when that fact is connected with the official station of the sheriff. Such a presumption is too rash to justify or support a verdict.- The whole case, as presented in the proof, seems to us father to have shewn, that the sheriff did not take Griffith .into custody. If he failed to do that, he is not answerable in this action. We were doubting whether fhe declaration was not defective, because it failed to aver that the sheriff had taken Griffith into his custody; but we settled down, that the averment that he- suffered him to escape, necessarily included the idea, that he was in the custody of the sheriff. Both should be made out in proof; first the capture, then the escape. In this it has not been done.
Sufficiency of the evidence examined.
What requisite to create liability, in an officer for an escape. That the principa i was prayed in custody by bis bail, insufficient. The capture, or the actual custody of ihe person, by the officer should be provedin order, escape^no'1'1 such proof,
Judgment-&. mandate of e 00urt'
Petition for are-hearing,
C. S. Bibb, for appellant; Monroe, for appellee.
Mr. Monroe, counsel for appellee, moved a re-hearing.
The judgment of the court below must be reversed,. and the cause remanded with'directions to grant a new trial. The appellant must recover his costs.